[Civ. No. 40017. First Dist., Div. Four. Mar. 21, 1978.]

GEORGE KIEVLAN et al., Plaintiffs and Appellants, v.
DAHLBERG ELECTRONICS, INC., et al., Defendants and Appellants.

**COUNSEL**

Richard M. Pearl, James Rumble and Donald Gartner for Plaintiffs and Appellants.

Lamson, Jordan, Walsh & Lawrence, Jordan, Walsh, Lawrence, Dawson & Carbone, Michael P. Carbone, David D. Dawson and Thomas F. Nelson for Defendants and Appellants.

Evelle J. Younger, Attorney General, Asher Rubin and John Fourt, Deputy Attorneys General, as Amici Curiae.

## OPINION

**CALDECOTT, P. J.**—Dahlberg Electronics, Inc., and Detection Sciences, Inc., defendants, appellants and respondents,[1] appeal from a judgment[2] permanently enjoining them "from advertising their hearing aids in California by representing that said hearing aids have any effect on diseases or disorders of the ear, or auditory apparatus, including hearing loss and deafness." George Kievlan, et al., plaintiffs,[3] respondents and appellants, have appealed from the judgment on the ground that attorney's fees were not awarded.

Dahlberg Electronics, Inc., is a Minnesota corporation which manufactures "Miracle Ear" and "Magic Ear" hearing aids. Dahlberg is a wholly owned subsidiary of Detection Sciences, Inc., a Minnesota corporation. Dahlberg sells a substantial number of hearing aids in California through retail hearing aid dealers. Dahlberg advertises its hearing aids extensively in national publications. Other advertisements are distributed by Dahlberg to its local dealers.

Defendants have appealed from the judgment on the grounds (1) the trial court erred in its construction and application of section 26463 of the Health and Safety Code; (2) that the statute is unconstitutional; and (3) that state regulation of hearing aid advertising has been preempted by federal law and regulations.

Plaintiffs have appealed on the ground that the judgment did not award attorney's fees.

[1] As both parties are appellants and respondents, for literary convenience we will refer to Dahlberg Electronics, Inc., and Detection Sciences, Inc., as defendants, and Kievlan and the other senior citizens as plaintiffs.

[2] The judgment was entered following plaintiffs' motion for summary judgment. The defendants agree there is no contested issue of fact in the case, only issues of law.

[3] Plaintiffs allege that they are six senior citizens who have brought this suit on behalf of themselves and the general public.

I

■ Defendants contend that the injunction does not merely prohibit advertising that their hearing aid would have a curative or therapeutic effect but that it also prohibits them from advertising that their hearing aids have *any effect,* including a compensatory effect on hearing loss. Defendants argue that section 26463 is concerned with false and misleading representations and that it is not the intent of the code section to prohibit advertising that a product will compensate for a physical disability without representing it will cure or remedy it. The difficulty with defendants' argument is that neither statute nor the judgment make any reference to compensatory effect, so the argument is not relevant. The code section, 26463, subdivision (m), provides: "It is unlawful for any person to advertise any drug or device represented to have any effect in any of the following conditions, disorders, or diseases: . . . (m) Diseases or disorders of the ear or auditory apparatus,·including hearing loss and deafness."

The statute is clear and unambiguous and does not exempt any so-called "compensatory effect." There is an exception included in the Sherman Food, Drug and Cosmetic Law, which authorizes advertising of drugs and devices having a curative or therapeutic effect under certain conditions (§ 26465),[4] however, this section makes no mention of compensatory effect and there is no claim by defendants that they had received any such authorization from the department exempting their product.

■ Defendants also claim a hearing aid is not a "device" within the meaning of Health and Safety Code section 26009, which provides: " 'Device' means any instrument, apparatus, or contrivance, including any component part, product, or byproduct of a device, or accessory, which is used, or intended for use, for any of the following:

"(a) In the diagnosis, cure, mitigation, treatment, or prevention of disease in man or any other animal.

---

[4]Section 26465 of the Health and Safety Code provides: "Whenever the department determines that an advance in medical science has made any type of self-medication safe and effective as to any of the conditions, disorders, or diseases named in Section 26463, the department shall, by regulation, authorize the advertisement of any such drug or device as having a curative or therapeutic effect for such disease, subject to such conditions and restrictions as the department may consider necessary to the interests of public health."

"(b) To affect the structure or any function of the body of man or any other animal." Without question, a hearing aid is an instrument or apparatus used in the *mitigation* of hearing diseases and affects the bodily functioning of the person using it. We also note that Business and Professions Code section 3305 defines a hearing aid as: ". . . any wearable instrument or device designed for, or offered for the purpose of, aiding or compensating for impaired human hearing."

■ Defendants contend that hearing aid dispensers are regulated by provisions of division 2, chapter 7.5 (commencing with § 3300) of the Business and Professions Code. This chapter provides for the licensing of persons who engage in the practice of fitting and selling hearing aids. Defendants do not contend that they are licensed under this act. Furthermore, defendants cite no authority to support their positions that chapter 7.5 and the Sherman Act are mutually exclusive. They are in fact complimentary and in a proper case both can apply.

## II

■ Defendants contend that section 26463 denies freedom of speech as guaranteed by the First Amendment of the United States Constitution, citing *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]. However, we need not reach this problem.

The judgment enjoined defendants from advertising their hearing aids by representing that the hearing aids have any effect on diseases or disorders of the ear including hearing loss and deafness. The Sherman Act, section 26460, declares it is unlawful for any person to disseminate any false advertisement of any device and declares an advertisement is false if it is false or misleading in any particular. It is clear from the copies of the advertisements that are included in the record that the advertisements were misleading in that they convey the impression that the hearing aid would have a curative or therapeutic effect. The defendants in their brief concede that hearing aids do not have a curative or therapeutic effect. The *Virginia State Board of Pharmacy* case is of no help to defendants. As a concurring opinion points out the court's decision did not preclude state and federal regulation of false or deceptive advertising. The injunction is thus proper.

## III

Defendants' third contention is that state regulation of hearing aid advertising has been preempted by federal law and regulation.[5] On May 28, 1976, the Medical Device Amendments of 1976 (90 Stat. 539) were enacted, amending the federal Food, Drug and Cosmetic Act. (21 U.S.C. § 301 et seq.) As amended, section 360k of that act provides:

"(a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

"(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

"(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

"Exempt Requirements

"(b) Upon application of a State or a political subdivision thereof, the Secretary may, by regulation promulgated after notice and opportunity for an oral hearing, exempt from subsection (a) of this section, under such conditions as may be prescribed in such regulation, a requirement of such State or political subdivision applicable to a device intended for human use if—

"(1) the requirement is more stringent that a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

"(2) the requirement—

"(A) is required by compelling local conditions, and

---

[5]This point was timely raised notwithstanding the fact that it was mentioned for the first time in defendants' closing brief. The implementing regulations were not approved until February 10, 1977, two months after defendants had filed their opening brief. Where a point of law which is determinative of an appeal is announced after the filing of the opening brief, the appellant is permitted to present the point in a closing or supplemental brief. (*Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 423-424, fn. 1 [71 Cal.Rptr. 903, 445 P.2d 519].)

"(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter. June 25, 1938, c. 675, § 521, as added May 28, 1976, Pub.L. 94-295, § 2, 90 Stat. 574." Implementing regulations concerning hearing aid devices were approved by the Food and Drug Administration on February 10, 1977, and became effective August 15, 1977. (21 C.F.R. §§ 801.420, 801.421.) According to the language of section 360k, the preemptive effect of the act upon state action, with respect to hearing aids, is to be determined by the three-way test (1) whether the state action is a "requirement" and, if it is, (2) whether it is "different from, or in addition to" any requirement of the act on that subject *and* (3) whether it "relates to the . . . effectiveness" of hearing aid. (21 U.S.C. § 360k, subd. (a).) Because the three factors appear in a conjunctive context (see *ibid.*), all three must appear before a court may declare that the act preempts Health and Safety Code section 26463, subdivision (m), in the hearing aid business.

Section 26463, subdivision (m), meets the third test to the categorical extent that it "relates to the . . . effectiveness" of hearing aids by prohibiting representations on this subject in copy which advertises them for sale. But, because it does this and no more, it fails the first test of preemption because it is a flat *prohibition*: it is not a "requirement."

If it may be treated as a "requirement," its effect is nevertheless limited to the *advertising* of hearing aids for sale. The federal act reaches the subject of advertising, but of "restricted devices" only. (21 U.S.C. § 352, subd. (r).) By the act's terms, "restricted devices" are those which the Secretary of Health, Education and Welfare determines, by regulation, may be sold upon licenses-practitioner prescription only. (21 U.S.C. § 360j, subd. (e)(1). For congressional intent on this precise subject, see 1976 U.S. Code Cong. & Admin. News, No. 3, Medical Device Amendments of 1976 [commencing at p. 1070], pp. 1086, 1113-1114.)

Defendants have not shown that the secretary has classified hearing aids as "restricted devices." The federal act itself thus includes no "requirement" concerning the advertising of hearing aids. No such "requirement" appears in the implementing regulations adopted by the secretary, which have nothing to do with advertising. (See 21 C.F.R. §§ 801.420-801.421.) Health and Safety Code section 26463, subdivision (m), cannot be "different from, or in addition to," a "requirement" of the act which does not exist. The second test of its preemption by the act therefore fails as well. Thus, section 26463 is not preempted by federal law.

## IV

Plaintiffs contend that the trial court erred in refusing to award them attorney's fees. They contend the trial court had the power to award attorney's fees under three theories: (1) the "substantial benefit" rule, (2) the private attorney general concept, and (3) the newly enacted Code of Civil Procedure section 1021.5, which became effective January 1, 1978.

Applicability of each of these theories of recovery depends on the facts of the particular case. At the time this case was tried, August 1975, *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244], and *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303], had not been decided and Code of Civil Procedure section 1021.5 had not been enacted. Neither the trial court nor the attorneys had the benefit of these authorities before them and the court specifically based its ruling, denying attorney's fees, on the apparent state of the law at that time. The judgment must, therefore, be reversed as to the issue of attorney's fees and the matter remanded to the trial court on that issue for further proceedings.

Defendants contend that Code of Civil Procedure section 1021.5 would not be applicable as it was not in effect at the time of trial. As stated in *Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 922 [102 Cal.Rptr. 248]: "Respondent . . . invokes the general rule of construction which frowns upon statutory retroactivity in the absence of a clear legislative direction. The rule has no application here. Section 800 [of the Government Code][6] classes itself as an ancillary provision, creating no new cause of action. It is procedural only. ■ A lawsuit is governed by a change in procedural rules made during its pendency, and the suit is pending until its final determination on appeal." ■ Section 1021.5 does not create a new cause of action; it is ancillary to the underlying cause. The cases cited by defendants are not in point, they involve changes that affect the cause of action. Section 1021.5 is not rendered inapplicable to the present case solely because of its effective date.

The judgment is reversed insofar as it does not provide for attorney's fees and the cause is remanded to the trial court for further proceedings

---

[6]Government Code section 800 provides for the award of attorney's fees under certain circumstances in any civil action against a government agency or officer.

on this issue only. In all other respects the judgment is affirmed. Plaintiffs to recover costs on appeal.

Rattigan, J., and Ragan, J.,* concurred.

A petition for a rehearing was denied April 14, 1978, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied June 15, 1978. Bird, C. J., did not participate therein. Manuel, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.